and Hardy v. Rabie. It's number 241138. May it please the Court. Good morning. My name is Michael Sink. With me today is Kerry Booth. We represent the Adams County Sheriff's Deputy, Robbie, or Rabie, and Detention Specialist D. Herrera. The plaintiff below, Mr. Hardy, filed a Section 1983 deliberate indifference claim arising out of an incident that occurred on September 22, 2022, when Mr. Hardy fell out of his wheelchair while inside his cell at the Adams County Detention Facility. Deputy Rabie and Detention Specialist D. Herrera separately filed motions to dismiss and asserted qualified immunity as a defense. This appeal presents this Court with three separate issues. First, whether Mr. Hardy's allegations as to each separate defendant are sufficient to state a claim for deliberate indifference against each of the two defendants. Second, the question is whether the law, case law, on deliberate indifference in this circuit in the Supreme Court has clearly established that each defendant's conduct as plausibly alleged in the complaint violated clearly established standards. And third, whether the District Court's decision to rely on case law not cited by either party on the issue of qualified immunity runs afoul of this Court's assessment of a burden on the plaintiff at the qualified immunity level. If the appellants prevail on any one of these three issues, the Court should reverse the District Court. Turning first into prong one in the allegations in the complaint, the facts as alleged indicate that neither defendant were present at the time that the plaintiff, Mr. Hardy, fell in his cell. They did not witness the event. They did not participate in the facts and circumstances giving rise to it. They were provided information of different sorts at various points after the initial fall. As to Detention Specialist D. Herrera, the only concrete allegations in the complaint are that he is the detention specialist who was on duty that evening. And that he was in the tower. The allegations assume that he's in the tower. They assert that he the basis for the quotation that Mr. Hardy draws inferences from regarding what Mr. Deputy Chavez said as to why he didn't respond to the button. And that quotation is that they were not going to be chasing buttons because the inmates were abusing the buttons. But nothing in that quotation itself on its face. Scalia. Are you arguing that we should reverse for Defendant Herrera? Because even under the 12B6 standard, the plaintiff hasn't alleged, and we can't credit the reasonable inferences from the complaint, that it was insufficiently pleaded that Herrera was the recipient of the three call buttons? In part, yes, Your Honor. Okay. Under Rule 8, to make an allegation, the plaintiff could pursue one of two paths. The plaintiff can base an allegation based on information in their possession. That as a recipient witness, they allege to have sensorily perceived. Here, from the perspective of a cell with the closed door, what is happening inside the tower across the common area cannot be known to the plaintiff. Well, Dennis, just make sure that we're on the same page. I know you make an argument that he couldn't have seen within the closed door. What you started by saying is, I don't even credit the fact that Herrera, whether it was Herrera or Kevin or Bob Bacharach, was in the tower that when his cellmate hit the emergency button three times. I don't, as Mr. Herrera's lawyer, I don't even agree that he's pleaded that it was Herrera that was the recipient of that call button. The complaint proceeds- So if you're arguing that, that's great. I just, I did not get that from your brief, so I'm pleased to know that you're denying that it was Herrera that was in the tower that received the three call buttons. No answer has been filed in this case. What we are arguing is that the complaint itself presupposes something that the plaintiff cannot know, which is the actual identity of the person in the tower at the time the call bells were allegedly made. Why isn't that permitted by our case law, though? We have cases that talk about the plausibility pleading standard and that recognize the asymmetry of information that can be involved in a scenario. In this factual scenario, it seems to me to be a very strong case for an asymmetry of information that an inmate in a cell could have no way of knowing who actually was in the call center to receive that call, but yet is relying upon other evidence to essentially plausibly allege that it was D Herrera. Because in paragraph 37 of the Second Amendment complaint, he then discusses or alleges facts that it was D Herrera who ignored the call button. I grant that the complaint accuses Mr. D Herrera of being the detention specialist. His name is in the complaint. Why is that enough? Because the plausible allegations require this court to pierce whether this plaintiff could have known the facts that he's alleging. This is akin in Iqbal, where the Supreme Court was concerned that the plaintiff had asserted conspiracy allegations against various parties whom the complaint revealed no concrete factual evidence that he had any basis to know that a conspiracy had occurred. And aside from just that general pleading issue under Iqbal and Rule 8 are two other variables. The first is in the case probably most analogous to the situation that is alleged against D Herrera, even if you get past this issue, is a case, is Lance, where this court rejected the supposition that the officer, their officer Morgan, had had a second conversation where additional information was revealed to him, where the plaintiff claimed he had made a call and spoke to someone in the tower and relayed the additional information, but didn't know who it was. And given that limited information, the court said you cannot impute that when you don't know that the officer Morgan was the recipient. In fact, he didn't allege that he was the recipient because he didn't have a second conversation. But here another officer told the plaintiff it was D Herrera. What the quotation in the, and here, if I may, I first need to make a slight correction. It, it, reply brief page 9 of our reply brief, the last sentence on that page, reads as if, and I, I hope this is not creating some of this confusion, as if we are contesting whether Mr. Hardy in his appellate brief has accurately quoted the, the complaint. We acknowledge that with some modifications he is accurately quoting the allegation from the complaint. What our point is, rather, is that the quotation that is being offered by Mr. Hardy is merely the quotation from Deputy Chavez that we are not going to chase buttons and prisoners are abusing buttons. The quotation attributed to Mr. Chavez has no reference to D Herrera or anyone else. But that's not the key part of paragraph 37. The key part is D Herrera did not respond to the emergency call button. I grant that that is stated in, as Mr. Hardy's inference from Deputy Chavez's  That quotation comes back up a second time as the predicate fact for the conspiracy allegation, which again, we have also argued is akin to the Iqbal allegation that is, is impermissible and that the court needs to, to pierce on a plausibility standard. But even if, even if. Could I just jump in and, I, I don't know if this is related. Well, it's related to Deputy Specialist D Herrera. I'm interested in something you have in your reply brief. It seems to make a bit of a concession about the objective step in a deliberate indifference claim. But I'm interested in your being very clear with us what's being conceded there and what's not. Based on the case laws that was presented to the district court, the district court did not do a detailed analysis of McCowan. That case was briefly raised below, but then pressed more vigorously on appeal. And based on that argument on appeal, and we can argue if we get to the third point about the burden to begin with, but on the assumption that there is good precedent, regardless of what was raised, there is an, one can read, and I think should read that as stating under prong one of the deliberate indifference standard, that an 150 minute ride in an officer's car where the plane is, the inmate is complaining of pain that the, that the deputy was there to witness and heard an audible shoulder tear is enough time to cost, constitute a sufficiently serious objective standard for deliberate indifference. So based on the 150 minute argument, if D Herrera was in the tower, and if he had more information than we argue that he is alleged to have, even assuming that he was there, we are not going to hang our appellate hat on the difference between 150 minutes and 90 minutes. Now, the reason we draw a line on what happened in the interim with the cellmate who is lifting him up in the medium is because we're not, it's not exactly clear what the time reference is there. And second of all, this court in, I believe it was Mata, indicated that it, it matters what the allegation is from the plaintiff as to the injury sustained. And if the injury sustained might even be brought by a third party, that changes the assessment entirely. So there is an argument. You're saying, I don't mean to be critical, I just didn't understand what you just said. So, so not with regard to deliberate indifference or the subjective prong, but you're saying with regard to the objective seriousness of the condition, I just didn't with the cause of that objective need, how that could relate to whatever you were talking about. I believe it is Mata, if it's not Mata, it's Quintana. The court goes out of its way in a paragraph to discuss the material significance of how you frame the injury to the, I believe the objectiveness of, of the seriousness of the injury. So whether you're complaining of just persistent pain for the duration of 90 minutes is one inquiry. Whether you're complaining of the back injury that has occurred because the cellmate comes in and intervenes and lifts you off the ground. You're still under pain. I mean, so you're saying that, well, because the cellmate caused the injury, so they don't have to do anything about it because they didn't cause it. So, and all I, yes, what I'm arguing though is that the 90 minutes related to the pain is one thing. Any injuries that were sustained separately from the generic pain because of the, the cellmate's intervening cause, that we are not considering that point. So if I'm an inmate and my cellmate brutalizes me and I am in severe pain, then, then the, then there is no Eighth Amendment requirement to provide me medical care because they didn't cause my pain. It was a cellmate. That's not what I'm arguing, nor is what I understand Mata to be saying. It's certainly not what any of the cases say, but I thought that's what you just said. No, Your Honor. I thought you were distinguishing between Herrera and Ravey, implicitly perhaps, because Ravey came by after it was the cellmate who had tried to hoist Hardy into the wheelchair. And that was the distinguishing fact between Ravey and Herrera? Or am I misunderstanding your argument? In Mata, I believe, the distinguishing point is that you, you pull apart the different elements that you are alleging as the objective prong of deliberate indifference. In Your Honor's question, if I've understood it correctly, is that you were saying pain and then the injury. And all we're saying is we're agreeing as to pain. Okay. What, what additional persistent injuries may be because of a back injury? Yeah. It doesn't matter, right? Considerable pain, under all of our case law, can be an objectively serious condition. And so back to Judge Matheson's question, if on pages five and six of your reply brief, you're acknowledging that the pain was an objectively serious condition for Herrera, there is certainly no allegation in the complaint that the pain had dissipated by the time Ravey comes. It had been exacerbated, perhaps, because of the cellmate. So I assume that you're conceding that there was an objectively serious condition through considerable pain with regard to the claims against both Herrera and Ravey. Not based as to Ravey under McCowan. McCowan is 150 minutes. The argument here, maybe, to Herrera is 90 minutes. The argument as to Ravey is indeterminate, but significantly shorter. And here, the chronology of the complaint is a little unclear. But the summary in argument on appeal suggests that the time passage between when Ravey hit that door and then closed the door and the evening medical pass was a few moments. Both are described roughly at the 90-minute mark. So if the time is approximately 90 minutes that passes before Ravey comes in, and then it's still approximately 90 minutes total before the evening medical pass, there are only a few moments where Ravey is allowing Mr. Hardy to persist in his state until the pre-scheduled medical pass comes in. Counsel, is your argument in the timing that the plaintiff doesn't allege that there was delay subsequent to Deputy Robby's interaction, or that it's unknown and therefore we can't hold that fact as one that's been plausibly alleged, or that there are facts that have been alleged that we know that we can say it was a very short time until the evening shift arrived? The former, Your Honor. Thank you. Well, you said a few moments. What's that based on? It is based on reading the complaint, which, as Judge Federico has indicated, is silent as to the gap in time after Ravey came, but it very clearly establishes the total duration until he does, and the statements in the response brief that seem to indicate that the med pass arrived approximately 90 minutes after the fall. Now, I don't read that as giving us precise chronology, but if that's how they're reading their own complaint, then there can only be a matter of a few moments. Whether that's 1 or 5 or 10, I know not, but the complaint itself is technically silent on that point. And I see I'm out of time. You are. Thank you. Thank you, Counsel. Good afternoon. It may please the Court. Kevin Jason for the Plaintiff Pele, Ralph Marcus Hardy. This is a case about inaction in the face of a medical emergency. It's about the responsibilities of those who are positioned to help and what happens when they do not do so. Since 2000, this Court has made clear that jail officials, when they're acting as gatekeepers, as a sole means of access to medical care, that they violate the Constitution when they delay this care or they deny it. That is exactly what happened here with the appellants. When Mr. Hardy fell from his chair and onto the ground, he experienced a moment of pain that he urinated himself. He was mobilized. When this occurred, he asked that his cellmate, Mr. Martinez, click a button for emergency distress. This was pursuant to the facility protocol that floor deputies will respond within seconds. He alleges that Appellant De Herrera was tasked with responding to this. And for this, I point to paragraph 26. I know there was discussion of this earlier. And he also alleges that De Herrera failed to notify any floor deputies. Mr. Hardy was on the ground for an hour. At the time, Mr. Martinez pressed the button once. There was no response. He pressed it a second time. There was no response. He pressed it a third time. No response. He didn't press it with seconds in between. He pressed it 10 to 15 minutes apart over a 45-minute window. Mr. Hardy, while he was on the ground, he eventually got aided to his chair by Mr. Martinez, his cellmate. But because Mr. Martinez is not a medical official, he's not trained in this, the predictable occurred. And then he exacerbated his injury and then was left in severe pain again in a contorted position within the chair. Does the, does your complaint reflect the basis on which to say that detention specialist De Herrera was, in fact, the person in the tower? Does the complaint explain how you came to that allegation? It does not. It does identify specialist De Herrera as the one who was responsible for responding and for notifying floor deputies. It doesn't explain the providence of that information. But as we do know, later on in the complaint, with the discussion with Deputy Chavez, that is circumstantial evidence that demonstrates that the reason why detention specialist De Herrera was not on the calls. But I do want to note that when it comes, so when it comes to specialist De Herrera, there is also circumstantial evidence as well that there was this policy and that he didn't follow it. These all go to a subjective prong. But before I go to that, I do want to just continue with this timeline and just clarify that a little bit as well. So I know that there was discussion about how much time had passed. My friend on the other side points to the fact that it's alluded to as mere moments, but that is not what is alleged in the complaint. Rather, Mr. Hardy lays out a timeline that while he was on the floor for an hour, that's when he got moved to the chair. 30 minutes after that, 90 minutes after the initial fall is when Deputy Raby came to a cell. That is when the 90 minutes is pertaining to the time in which Raby observed Mr. Hardy in his chair, commented about that he asked what happened to him. Mr. Hardy declared a medical emergency. Mr. Raby did not act on that. He did not tell anyone and instead he told them to file the grievance. But he also alleges immediately after that that Deputy Raby went home. He describes that he didn't alert anyone, that there was a shift change, that shift change occurred, and then there was another rotation of guards, that Deputy Chavez then came. And then even then, it was only after the distribution of medicine that he offered medical assistance. And he actually doesn't even allege that the assistance occurred at that point. Counsel, could I just, I'm interested in this last minute or so of timeline on Deputy Raby. Would you agree that Deputy Raby was not responsible for any harm that Mr. Hardy suffered before he, Deputy Raby, came to his cell? That is correct. Deputy Raby did not have an opportunity, as far as is alleged in the complaint, to intervene in any of the steps before then. So how long did Mr. Hardy have to wait for medical attention after Deputy Raby left his cell? So for that, I would note that this Court has made clear that even a mere delay may be unconstitutional. Well, now I'm asking you how long. You can get to the legal argument, but factually, how long? I mean, I think I would caution the Court against parsing it out in this way. I think that's a departure from how it's done. And I'd be happy to answer the question, but I do want to just first go to first principles. Well, how long? Okay. So, I mean, what we do know is that in McCohen, it was often been described as two hours. Here. In what? In McCohen v. Morales. No. How long was it here? How long did it take between Dr. Raby leaving and the medications nurse arriving? I see. I apologize. I thought you were asking how long it would have to be. No. I'm asking what it was. It actually was over an hour. Over an hour. It was over an hour. And is that alleged in the complaint? That amount of time was not articulated in the complaint. Well, then how can we accept that as the time? Because in this, so. We can only look at the four corners of the complaint. Understood, Your Honor. And that's why I'm saying that this court should be viewing it as an hour. It would be necessary to determine that there was the objective prong met. I do think that the operative question here is not defended by defendant how much time has passed. Well, why wouldn't it be? How did Deputy Raby's failure to summon medical assistance cause injury to your client? Because the question is, ultimately, what is the pain or suffering that the plaintiff incurred? And this court has held that when someone is failing to act, that they can't go to what happened subsequently. Well, OK. Let's just parse this out. What if the nurse came within two minutes? So I think that is. What if the nurse came within two minutes? So you have a case. I think that here, in this case, we don't actually need to address that. But I will answer the question in that I do think that per the standard of matter, where they do say that a mere delay may be unconstitutional. And they do point to an analysis. You're not answering my question. It's two seconds. Sure. I mean, at some point, he's not going to be liable, correct? That is correct, Your Honor. What is that point? I mean, so I will say that I could understand if the court did find that to be the case, like, in abstract, in hypothetically. No, I'm not talking about that. We're in the abstract, because you haven't alleged it. So in this case, Mr. Hardy did say, and he filed this complaint pro se, and he wasn't aided with the assistance of counsel at the time when he was proceeding in the district court. You have an amended complaint, though, don't you? We do have an amended complaint. I should also note that there is also a pending amended complaint at the district court level, should this get remanded, and that he is now being benefited by counsel at the lower court. Because I do think that there are some ambiguities to the complaint. I do admit that in terms of, like, identifying the number of minutes. But what is not unclear is, what were the specific events that happened before he received any medical care? And whether or not there was a shift change is an objective fact that could be determined and then could be further elaborated upon on summary judgment. I mean, he's not saying that at some point later it just happened. He's saying that it just happened after. He does mark specific events that occurred between when Raby was there and when he eventually did speak to the next guard. Counsel, can I ask you about, to continue on this line of questioning, because maybe I misunderstood your argument from the briefs and then today. I understood in reading the briefs that the analysis between the two defendants is different because there's no allegation that De Herrera would have ever observed Mr. Hardy in serious pain. And so the objective prong in regards to De Herrera is that the delay, that the delay between when the emergency call goes in until, you know, 90 minutes later, is what makes the objective prong viable under De Herrera. The difference being with Deputy Raby is, once he comes in and observes Mr. Hardy, who expresses a medical emergency and serious harm, at that point the objective prong is met. Do I have that part right? I think if the court were to look at that, that would be correct. But I don't mean to belabor it, but I do think that this court in the past hasn't viewed it that way with the objective prong. I do want to just point to Seelock, for example. That's a case in which, that's the seminal case on this matter. There, the defendant in whom they found that summary judgment was not, or rather that he should be held liable. He saw the individual and then he denied care. Notably, after that happened, another guard came and offered pain relief and a pain reliever. And then the court didn't look to the time period from when this guard saw the plaintiff and then when the next guard came, or rather from when the guard came, denied care, and then when he ultimately got the care from the actual medical facility. And there it also just looked at the totality of whether or not there have been hours of and the pain of suffering that occurred rather than what were the intermediate steps. Usually this case, excuse me, usually this court only looks at defendant by defendant when analyzing the subjective prong. And you know, I would also look to MATA. That's another case where there are multiple defendants. And in analyzing all of them, it doesn't try to go step by step to determine what was the objective harm at each level. Rather, it's identifying what does the person know and what were the steps that they took perspectively. Because again, and in MATA, this is also notable. There, one of the guards said, ultimately, they did see someone else the next morning. So it's okay. But then he said, you didn't know that at the time when you denied the care. So you cannot now benefit from that just because ultimately they did see something after that. Counsel, can I go back to a point I think you were going to make towards the beginning about De Herrera and the subjective prong? And in paragraph 37, which my reading of the case is sort of the primary allegation that gives rise to facts that would support the claim against De Herrera, you mentioned how the Deputy Chavez's comments to Mr. Hardy give rise to a quote about some inmates abuse the buttons and they are not going to spend their entire shift chasing buttons. But as the defendant points out, when he, in the allegation, it says living unit deputies, but that excludes detention specialist De Herrera because he's not a living unit deputy. So what's your response to that argument made by the defendant? I think, yeah, so I understand the point, Your Honor. And I don't think the title here should be read so literally as to exclude, because, you know, for one, detention specialist De Herrera, I'm not sure, Mr. Hardy wasn't, as far as we understand, drawing any distinctions by title. I mean, this was clearly regarding the actions of detention specialist De Herrera. Yeah, but he's aware of that distinction. And I know that because in his handwritten paragraph 37, as you look, it says in the first sentence, Deputy Chavez also informed Mr. Hardy that the reason defendant and then written above it says DDT period specialist. No, absolutely. So he seems to be aware of that distinction. Sure. And I mean, I think this court actually probably does not even need to, I think regardless of whether or not there was a distinction, it actually doesn't change the analysis because I think the operative allegation is that De Herrera was the one who was supposed to alert the deputies and that he did not do so. And it was, and as alleged, you know, Mr. Hardy points out that he, the expectation was that De Herrera was supposed to act. And then he alleges that there was a failure of action. I think that for 37, it spoke more to the reasoning, not to like who was supposed to be doing what. But I do take your point that that was written in the complaint. Can I ask you a follow-up question? And that is in Seelock, Mata, Lance, all of the cases, as I understand it, there was a situation where the court recognized a constitutional violation when the officer either observed or was told, for example, in Lance or in, at Booking, as in Quintana, sees or hears the inmate say, I have a medical need, a pre-epism, a chest pain. The oddity about, not the oddity, I think arguably the unique aspect of this case with Officer Herrera is that emergency button was just that for all emergencies. I wasn't fed. They forgot to bring me my medications. They forgot to bring me my evening meal. And on prong two, at least, of qualified immunity, is it a problem that we don't have clearly established case law saying that an officer who is aware that there's an emergency, who is deliberately indifferent to caring for the emergency, can, survives prong two when we don't know whether the emergency was of medical need? So I think in response to that, I'll just point to, again, the description of the training video that says that when the button is pressed, someone will respond within seconds. I think that speaks to the gravity of like how this button is treated. And I'll also just point to Velez, which is a Seventh Circuit case that we pointed to, which is one in which a button was pressed and then there was a failure to respond to it. Again, there the defendant said, I don't know what's happening in cell. I can't, you know, how am I supposed to know what to respond to if I don't even know what happened? But then the court found that this failure to investigate, this failure to learn more, is actually what made it fatal for his defense and that he ultimately was still held liable. This is consistent with Farmer and footnote eight, which also talks about- What's your best Tenth Circuit case for clearly established law? Oh, sure. I mean, for there, I think Lance v. Morris also speaks to this because for the one defendant in which there was qualified immunity granted or they were ultimately found not to have violated the Constitution, the court mentioned three times that the issue was that he spoke to the plaintiff and that there was no mention of medical symptoms, no mention of a need for medical attention. Here, Deher did even less. He didn't even respond to the call to even ascertain that. Tom? You mentioned a few minutes ago something about an amended, another amended- Yes. So to that, I was saying that currently pending before district court, it stayed because of the proceedings here happening in this room, but the court did request or order the plaintiff to amend the complaint. So I was just noting that it would be more appropriate to remand this for the allegations to be- for that amendment process to be followed through. It would be premature to grant qualified immunity at this stage and that they should affirm the lower court's decision because the lower court's decision, you know, now we know it's also anticipating an amended complaint as well. Well, okay. I think I heard you say two things. Remand for the district court to consider whether you can amend the complaint. I'm sorry. No, I'm saying remand for further proceedings and the district court independently has this determined that they are going to seek leave. I mean, grant leave to amend. I hope that clarifies that, Your Honor. I'll have to think about that. Sure. No problem. Thank you. I do see my time. Thank you, Your Honor. Yes. All right. Our time has expired. I appreciate the arguments from both counsel this morning. The case will be submitted and counsel will be excused.